### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

_____

In re:                                          Chapter 7

PAUL HANSMEIER,                                 No. 15-42460

      Debtor.


_____

PAUL HANSMEIER, Debtor,                         Adv. No. 16-04124

      Plaintiff

  v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

      Defendants.


_____

### MOTION OF DEFENDANTS TO
### WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT
_____

      Defendants Sandipan Chowdhury and Booth Sweet LLP (collectively, "Defendants"), by and through their undersigned counsel and pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, and Rule 5011−1 of the Local Rules for the United States Bankruptcy Court for the District of Minnesota, hereby move for the entry of an Order withdrawing the reference of the above-captioned Adversary Proceeding to the United States Bankruptcy Court for the District of Minnesota.

Defendants move to withdraw the reference by timely motion for cause shown pursuant to 28 U.S.C. § 157(d):

1. The substantive cause of action contained in the Adversary Complaint is a non-core claim for unjust enrichment.

2. Defendants have not consented to the bankruptcy court entering a final order or judgment in any non-core proceeding and are also entitled to, and will seek, a trial by jury.

3. The issue presented in this Adversary Proceeding is already subject to pre-bankruptcy plenary litigation before Judge Indira Talwani in the District Court of Massachusetts. *AF Holdings LLC v. Chowdhury,* No 12-cv-12105 (D. Mass. 2012).

Dated: May 8, 2018

Respectfully,

s/ Jason E. Sweet
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                          Chapter 7

PAUL HANSMEIER,                                 No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                         Adv. No. 16-04124

     Plaintiff

  v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

### MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT

---

     Defendants Sandipan Chowdhury ("Chowdhury") and Booth Sweet LLP ("Booth Sweet") (collectively, "Defendants"), by and through their undersigned counsel and pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, and Rule 5011−1 of the Local Rules for the United States Bankruptcy Court for the District of Minnesota, hereby move for the entry of an

1

Order withdrawing the reference of the above-captioned Adversary Proceeding to the United States Bankruptcy Court for the District of Minnesota.

## PRELIMINARY STATEMENT

This Court may withdraw the reference of an adversary proceeding to the bankruptcy court "for cause shown." 28 U.S.C. § 157(d). For the reasons discussed below, such cause exists.

Whatever efficiencies there were to be gained by referring this Adversary Proceeding to the bankruptcy court in 2016 have already been achieved, and continuance of the reference going forward will only give rise to increasing inefficiencies. The substantive cause of action contained in the Adversary Complaint is a non-core claim for unjust enrichment. Defendants have not consented to the bankruptcy court entering a final order or judgment in any non-core proceeding and are also entitled to, and will seek, a trial by jury. Because this Court would be required to conduct a comprehensive, *de novo* review of any final ruling the bankruptcy court might issue on the pending claim, efficiency and judicial economy now favor the return of this Adversary Proceeding. In that way, the parties and the Court can avoid having to litigate the same issues twice: this Court would decide dispositive motions in the first place, as with most civil cases in this district, and then would preside over whatever portions of the case remain.

Withdrawal of the reference is also necessary to prevent the manifestly unfair and judicially inefficient result of requiring Defendants to repeatedly defend

against duplicative claims and allegations on competing tracks in separate forums, while its litigation adversary get several bites at the same apple. The issue presented in this Adversary Proceeding is already subject to pre-bankruptcy plenary litigation before the District Court of Massachusetts. This is a paradigmatic case in which "the overlapping of facts, transactions, and issues in the two cases … is good cause for withdrawal of the reference and consolidation with the district court proceeding." *In re Wedtech Corp.*, 81 B.R. 237, 239 (Bankr. S.D. N.Y. 1987) (withdrawing reference in adversary proceeding asserting fraudulent transfer claims). To put it simply, judicial economy and the risk of inconsistent judgments warrants withdrawal and consolidation instead of trying two separate actions on two separate time lines in two separate courts. Surely in this situation there can be no meaningful risk of prejudice to the Debtor, who chose to pursue an Adversary Proceeding in what he considers to be a more favorable forum, in an effort to end-run around substitution proceedings unfavorable to him in Massachusetts, based upon the same operative facts and legal theories.

Accordingly, for these reasons, and based upon the standards applied within this Circuit, this Court should withdraw the reference.

## RELEVANT FACTUAL & PROCEDURAL HISTORY

On November 13, 2012, the Debtor, Paul Hansmeier ("Debtor") under the guise of AF Holdings LLC, filed suit against Sandipan Chowdhury ("Chowdhury") in the District Court of Massachusetts. *AF Holdings LLC v. Chowdhury*, No. 12-

CV-12105 (D. Mass. 2012) (hereinafter "*AF Holdings*"). On May 6, 2013, it was determined that the Debtor, John Steele ("Steele") and Paul Duffy ("Duffy")—collectively, "Principals"—employed AF Holdings and Prenda Law as alter egos in a deliberate attempt to obscure the fact that any settlements collected by Prenda Law on behalf of AF Holdings were then diverted into their own pockets. Doc. 38 at Exhibit C (Memorandum in Support of Substitution). The *Ingenuity 13* court found the Principals jointly and severally liable for the acts of one another, AF Holdings and Prenda Law. *Ingenuity 13 LLC v. Doe*, No. 12-CV-8333, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013), *aff'd* 651 Fed. App'x. 716 (9th Cir. 2016); *AF Holdings v. Navasca*, No. 12-CV-02396, 2013 U.S. Dist. LEXIS 149156, *34 (N.D. Cal. Sep. 16, 2013).[1]

The *AF Holdings* court entered an uncontested $64,180.80 default judgment against AF Holdings LLC. *AF Holdings,* Doc. 31. The *AF Holdings* court re-entered the judgment jointly and severally against AF Holdings, Prenda Law, and their Principals, and denied their motions to vacate that judgment. *Id.,* Docs. 34, 43. The Principals appealed the judgment. *Id.*, Doc. 45. The District Court of Massachusetts certified the judgment for registration in other districts [*Id.*, Doc. 67], and on October 17, 2014, the *AF Holdings* judgment was registered as a lien on the Debtor's homestead in Minnesota.

---

[1] The *Ingenuity 13* and *Navasca* decisions were provided to the bankruptcy court in *In re Hansmeier*, No. 15-BK-42460, Docs. 184-4, 192-3; and Doc. 192-8 respectively (Bankr. D. Minn. 2015) (hereinafter "*Hansmeier*").

On July 13, 2015, the Debtor filed a voluntary Chapter 13 petition [*Hansmeier*, Doc. 1] and moved to avoid the lien imposed by the *AF Holdings* judgment. *Id.*, Doc. 23. Defendants opposed [*id.*, Doc. 27], and the Debtor withdrew the motion [*id.*, Doc. 46]. The Debtor then petitioned the bankruptcy court for, and was granted, permission to sell his homestead pursuant to 11 U.S.C. §§ 363, 1303 and use the proceeds to pay the Defendants. *Id.,* Doc. 49 at 4–5; *id.*, Doc. 78 at 17:25; *id.,* Doc. 59 at ¶ 3. The bankruptcy court then converted the Debtor's bankruptcy to Chapter 7 on the basis of Debtor's fraud. *Id.*, Doc. 60; *In re Hansmeier*, 558 B.R. 299, 302–303 (B.A.P. 8th Cir. 2016).

On August 4, 2016, the First Circuit vacated and remanded the *AF Holdings* court's judgment against the Principals on a procedural issue. *AF Holdings*, Doc. 76. The judgment against AF Holdings and Prenda Law still stands. *Id.*, Doc. 78.

The *AF Holdings* court ordered Chowdhury to file an amended judgment. *Id.*, Doc. 79. However, the Debtor's bankruptcy had triggered the automatic stay under 11 U.S.C. § 362, which prevented further judicial proceedings in *AF Holdings*. Defendants and the other creditors with judgments against the alter egos were denied relief from the stay on the basis that the judgments were not held in the name of the Debtor, but rather his alter egos. *See e.g. Hansmeier*, Doc. 97.

On November 18, 2016, the Trustee commenced the present Adversary Proceeding against Defendants.[2] The complaint sought to avoid and recover the settlement paid from the proceeds of the sale of Debtor's homestead. Doc. 1 at ¶ 2 ("This is an action for declaratory judgment regarding bankruptcy estate property, and avoidance of the transfer of estate property, pursuant to 11 U.S.C. §§ 105, 541, 542, 544, 548, 550, 704, Fed.R.Bank.Pro. 7001(1), (2) and (9), 28 U.S.C. § 2201 and common law."). The complaint however, only stated an actionable claim for unjust enrichment. *Id.*, at ¶¶ 34–41.

The creditors filed a joint motion asking the bankruptcy court to enforce the judgments held in the names of the alter egos against the Debtor himself. *Hansmeier*, Doc. 191. However, the bankruptcy court declined to hear the motion because it was not filed as an adversary proceeding. *Id.*, Doc. 213. Subsequently, any claims based on judgments held against the alter egos were objected to and dismissed.

On September 28, 2017, the Trustee presented five proposed settlements with the remaining creditors. *Hansmeier*, Docs. 225, 226, 227, 228 and 229. Each creditor agreed to accept "20% of its filed claim, as full and final payment on its claim;" *Id.*, at ¶ 2(a). The bankruptcy court granted the settlements on October 25, 2017. *Id.*, Docs. 232, 233, 234, 235 and 236.

---

[2] Misapplication of Fed. R. Civ. P. 55 gave rise to the Defendants' first appeal in this Adversary Proceeding. *Hansmeier v. Chowdhury*, No. 17-CV-00723-JRT (D. Minn. Nov. 16, 2017) (hereinafter "*Chowdhury I*").

On November 15, 2017, the Trustee proposed a settlement to the bankruptcy court wherein control of the Adversary Proceeding would be transferred to the Debtor in exchange for the dismissal of Debtor's claims against the Trustee and a contingent security interest in any recoverable proceeds and the dismissal of Debtor's then-pending claims against the Trustee. *Id.*, Doc. 247. The terms of the settlement were granted on December 6, 2017. *Id.*, Doc. 258.

On December 11, 2017, the Debtor filed to waive his discharge. *Hansmeier*, Doc. 260. The waiver was granted on January 3, 2018. *Id.*, Doc. 262. By virtue of Hansmeier's waiver, the automatic stay was terminated [11 U.S.C. § 362(c)(2)(C)]. On January 11, 2018, the Debtor was substituted for the Trustee in this proceeding. Doc. 31. On January 31, 2018, the Debtor was served with a motion to substitute in *AF Holdings*. Doc. 38 at Exhibit B. The substitution motion in *AF Holdings* has since been fully briefed by the parties.

The Debtor moved for summary judgment on February 21, 2018 [Doc. 35] and Defendants opposed [Doc. 38]. At the hearing on March 7, 2018, the bankruptcy court granted the Debtor's summary judgment. The judgment is currently on appeal for reversible error and mistakes of fact. *Chowdhury v. Hansmeier*, No. 18-CV-00761, Doc. 9 at 8–12 (D. Minn. 2018) (hereinafter "*Chowdhury II*").

7

## ARGUMENT

### I.    Relief cannot be sought from the bankruptcy court.

Local Bankruptcy Rule 5011-1 provides that a motion for withdrawal of the reference "shall show that relief by way of abstention, remand or transfer was first sought and not obtained or could not be sought from the bankruptcy court." Defendants seek withdrawal of the reference "for cause" due to the non-core nature of the claim, jury demand and the first filed *AF Holdings* litigation pending in the District Court of Massachusetts. Under these circumstances, abstention and remand —procedural devices grounded in federalism and comity, which place both constitutional and discretionary limits on a bankruptcy court's jurisdiction over proceedings which may be brought in state court—are inapplicable. *See* 28 U.S.C. §§ 1334(c), 1452(b). Transfer is similarly inapplicable. The bankruptcy court's transfer powers are governed by Local Bankruptcy Rule 5011-3(a), which provides that "[o]n the judge's own initiative or on motion of a party in interest, the bankruptcy judge shall transfer to the district court" certain specified proceedings, which are described in language that tracks certain statutory bases for withdrawal of the reference—specifically, those enumerated in 28 U.S.C. §§ 157(e) (cases triable by jury) and 157(c) (non-core proceedings). Although the bankruptcy court is aware of the pre-bankruptcy litigation in Massachusetts and the overlapping nature of the issues, it has refused to cede jurisdiction.

## II.    This motion is timely filed.

A court has the discretion to withdraw the reference *sua sponte* or on motion of a party if the motion is "timely." 28 U.S.C. § 157(d). Section 157(d) does not define when a motion is timely, and courts are not in agreement. *Cf. Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 730 (Bankr. D. Kan. 1986) (ten-month delay in filing a motion to withdraw reference was "timely"); *Laine v. Gross*, 128 B.R. 588, 589 (Bankr. D. Me. 1991) (six month delay was untimely). Courts do, however, agree that a motion is timely "if it was made as promptly as possible in the light of the developments in the bankruptcy proceeding" or more simply, if it was made "at the first reasonable opportunity." *U.S. v. Kaplan*, 146 B.R. 500, 503 (Bankr. D. Mass. 1992). Requiring the party seeking withdrawal to file its motion as soon as possible protects the court and the parties in interest from useless costs, unnecessary delays, and abusive stalling tactics. *In re Giorgio*, 50 B.R. 327, 328 (Bankr. D.R.I. 1985).

Whatever tenuous jurisdictional grasp the bankruptcy court had over the unjust enrichment claim—a pure question of state tort law—is now gone. This is an Adversary Proceeding initially brought by the Chapter 7 Trustee to avoid and recover the settlement paid from the proceeds of the sale of Debtor's homestead. The claim was brought pursuant to statutory and common law. Doc. 1 at ¶ 2.

On October 25, 2017, the bankruptcy court granted settlements in the underlying bankruptcy, wherein each of the 5 remaining creditors agreed to accept

"20% of its filed claim, as full and final payment on its claim." *See e.g. Hansmeier*, Doc. 225 at ¶ 2(a). On December 6, 2017, the bankruptcy court approved between the Trustee and Debtor, wherein control of the Adversary Proceeding would be transferred to the Debtor in exchange for a contingent security interest in any recoverable proceeds and the dismissal of Debtor's claims against the Trustee. *Id.*, Docs. 247 and 258.

On January 3, 2018, the bankruptcy court approved the Debtor's waiver of discharge. *Id.*, Docs. 260 and 262. By virtue of the Debtor's waiver, the automatic stay that had held the *AF Holdings* proceedings in abeyance was lifted; the Debtor served; and the issue of the Debtor's liability fully briefed by the parties therein.

On January 8, 2018, the Trustee's abandonment of the claim to the Debtor became final. While perhaps not a true abandonment under § 554, the Trustee's assignment, taken with bankruptcy court's approval, means that no one is acting on behalf of the estate or has standing to pursue the statutory claims. *In re Petters Co.*, No. 08-BK-45257, 2017 Bankr. LEXIS 1804, *19 (Bankr. D. Minn. May 31, 2017) (emphasis in original) (Sanberg, C.J.) ("In the Eighth Circuit, a bankruptcy trustee *alone* has standing to avoid a debtor's fraudulent transfers of property under 11 U.S.C. §§ 544(b) and 548."). As the Debtor lacks standing to invoke the Trustee's avoidance powers, the bankruptcy court has lost whatever jurisdiction it had because all that remains is a state law claim for unjust enrichment. *Inf.* at 27.

It also means the Trustee determined that further litigation of the avoidance claim was unwarranted and worthless to the estate. The creditors all settled prior to the assignment and this is the only remaining proceeding concerning the underlying bankruptcy—there remains no estate left to administer. *See e.g. In re Davison, III,* 186 B.R. 741, 742 (Bankr. N.D. Fla. 1995) (finding an action for the recovery of a preference must be dismissed upon the dismissal of the underlying bankruptcy case).

Immediately after the Debtor was substituted in *this* Adversary Proceeding he moved for summary judgment. Doc. 35. That matter is now on appeal for reversible error. *Chowdhury II,* Doc. 9 at 8–12. The filing of the motion to withdraw the reference therefore is at the "first possible opportunity," *Giorgio*, 50 B.R. at 328, and is thus timely.

## III.    In defense of precedent.

At the threshold, before reaching the merits of the motion to withdraw reference, the significance of prior precedent needs to first be addressed. Frequent and careless departure from prior case precedent undermines confidence in the reliability of court decisions.

> Without governing standards or principles, such provisions threaten to condone judicial "whim" or predilection. At least, utterly freewheeling inquiries often deprive litigants of the basic principle of justice that like cases should be decided alike.

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1980, 1985 (2016).

11

**A.    Declining to acknowledge the findings in *Ingenuity 13* has given the Debtor yet another bite at the apple.**

Central to the Adversary Proceeding is the Debtor's contention he is not liable for a judgment held by Defendants in the name of his alter egos, AF Holdings and Prenda Law. The sheer volume of evidence and precedent to definitively establish the Debtor's liability on this judgment is expansive. The Debtor's alter ego relationship with AF Holdings and Prenda Law, and control over the litigation was squarely at issue in *Ingenuity 13*, contested in both the district and appellate courts, and resolving those issues was essential to the sanctions judgment on the merits against him. *See e.g. Hansmeier*, Doc. 191, 192-3. The Ninth Circuit affirmed *Ingenuity 13* on all grounds and specifically affirmed the findings that the Principals controlled and bore responsibility for the cases litigated in AF Holding's name:

> Based on the myriad of information before it—including depositions and court documents from other cases around the country where the Prenda Principals were found contradicting themselves, evading questioning, and possibly committing identity theft and fraud on the courts—it was not an abuse of discretion for Judge Wright to find that Steele, Hansmeier, and Duffy were principals and the parties actually responsible for the abusive litigation. Similarly, it was not an abuse of discretion for Judge Wright to find that the Prenda Principals were indeed the leaders and decision-makers behind Prenda Law's national trolling scheme.

*Ingenuity 13 v. Doe*, 651 Fed. App'x. 716 (9th Cir. 2016) (footnote omitted).

In *Gurley,* the Eighth Circuit explained the requirements issue preclusion:

> [O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits

12

> based on a different cause of action involving a party to the prior litigation."
> *Montana,* 440 U.S. at 153, 99 S. Ct. at 973. The appellants were entitled to
> rely on collateral estoppel in this case if "(1) the issue was identical to one in
> a prior adjudication; (2) there was a final judgment on the merits; (3) the
> estopped party was a party or in privity with a party to the prior
> adjudication; and (4) the estopped party was given a full and fair opportunity
> to be heard on the adjudicated issue.

*United States v. Gurley,* 43 F.3d 1188, 1198 (8th Cir. 1994).

> The court also found that Hansmeier and his partners "created these entities
> to shield the Principals from potential liability and to give an appearance of
> legitimacy." *Id.* at *2. Finally, other Courts have summarized the findings in
> *Ingenuity 13* using the phrase "alter ego." *See AF Holdings LLC v. Navasca*,
> No. C-12-2396 EMC, 2013 WL 5701104 at *9, *15 (N.D. Cal. 2013)
> (stating in a report and recommendation that "[i]ssue preclusion bars AF,
> Steele and Hansmeier from re-litigating the findings of fact Judge Wright
> made in *Ingenuity 13* regarding their **alter ego** relationship.")

Order, *Chowdhury I*, Doc. 22 (emphasis in original) (Tunheim, C.J.).

"To preclude parties from contesting matters that they have had a full and

fair opportunity to litigate protects their adversaries from the expense and vexation

[of] attending multiple lawsuits, conserves judicial resources, and fosters reliance

on judicial action by minimizing the possibility of inconsistent decisions."

*Montana v. United States*, 440 U.S. 147, 153–54 (1979). The principles of issue

preclusion apply to bankruptcy proceedings. *Katchen v. Landy*, 382 U.S. 323, 334

(1966).

However, despite this lengthy precedent, the bankruptcy court's position has

been that issue preclusion only applies to matters it decides.

> Contrary to the defendant's arguments, the alter ego theory that they assert has not been properly litigated … [because] [t]his issue has not been litigated in this court.

Doc. 23 at 30:2–4; 31:15–16. *Cf. Heiser v. Woodruff*, 327 U.S. 726, 736 (1946) (There is "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*."); *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010) (Issue preclusion applies even if a previous decision was decided wrongly, or in error.).

The injustice to be prevented in alter ego cases is that of leaving the creditor with an uncollectible judgment, while allowing its alter ego to go free. In the *Ingenuity 13* litigation, the court conclusively determined the issue of alter ego liability. There was nothing remaining to be litigated on the liability issue; the only remaining issue in the case was damages. Moreover, the evidence regarding alter ego liability is overwhelming. The record includes findings of fact, business documents, deposition testimony, plea bargains, and financial records—many of which were provided to the bankruptcy court. *See e.g. Hansmeier*, Docs. 192-1 thru 192-31. The *Ingenuity 13* court's review of the undisputed evidence was thorough and led to the inescapable conclusion that the Debtor and those entities were one in the same for purposes of liability. That determination cannot be now disputed by the Debtor or the bankruptcy court.

Refusing to acknowledge the Debtor as the real party in interest on claims held against his alter egos, then, represents a significant detriment to the

14

Defendants, while at the same time permitting Debtor to receive a windfall by virtue of not being held accountable for his actions. The record supports the finding that the Debtor's purpose in filing bankruptcy was to thwart his creditors, not to attempt to reorganize. *Hansmeier*, Doc. 78 at 47:12–20 ("this case was designed for one purpose only, to thwart the collection efforts of creditors"). The impetus for the bankruptcy was to delay: to obtain the automatic stay and thereby bring to a stop the numerous plenary actions then pending against the Debtor. *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 381 (8th Cir. 2000) (the "powerful equitable weapons" of the bankruptcy court should be "available only to those debtors … with 'clean hands'" and not to those debtors "whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.").

This was the scenario common to the majority of creditors, and one that should have been dealt with at the outset of the bankruptcy. Instead, creditors such as Defendants found themselves in limbo after years of litigation with the Debtor, stayed from moving forward in the courts where they obtained the judgments and unable to enforce them in a bankruptcy court that refused to acknowledge the effects of preclusion.

1.    **Unorthodox proceedings and inconsistent judgments on the Debtor's liability have already resulted.**

Failure to abide by long standing precedent has already harmed the Defendants. On July 5, 2017, the Debtor filed a nuisance suit against several creditors, including Chowdhury. *Hansmeier v. Booth et al*, No. 17-AP-04076, Doc. 1 (Bankr. D. Minn. July 27, 2017) (hereinafter "*Booth*"). What followed was … unprecedented.

First, six days after being served, and before Defendants' time to answer had expired, the Debtor moved for summary judgment. *Id*., Doc. 6 (July 12, 2017). The bankruptcy court scheduled Defendants' response to as due July, 21, 2017—9 days after the motion was filed. Defendants argued in part, that on procedural grounds alone, D. Minn. LR 7.1(c)(2) allows 21 days for a defendant to respond to a dispositive motion—not 9 days [*Booth*, Doc. 7 at 6–7];[3] and that in instances where a motion for summary judgment is filed before a responsive pleading is due, Rule 56 contemplates the time for responding to the motion as 21 days after the responsive pleading is due [*Id*. (citing Fed. R. Civ. P. 56 advisory comm. note (2009))]. The bankruptcy court's order did not address this procedural irregularity.

---

[3] Additionally, in the absence of a local rule or court order to the contrary, Fed. R. Civ. P. 6(c) requires at least 14 days' notice for any written motion. Nothing in Rule 56 supersedes or excepts summary judgment motions from this general requirement regarding the minimum notice that must be given by a moving party.

*Id.*, Doc. 9.[4] Rather, the court's only comment was that a party may move for summary judgment at any point.

Second, the bankruptcy court held that because the creditors' claims were premised on judgments held against his alter egos, they were false.[5] In contrast to the court's resolution, the general rule in the Eighth Circuit is that a creditor may file an amendment to a timely filed proof of claim after the claims bar date expires and that amendment will relate back to the date of the original proof of claim. *Matter of Best Refrigerated Exp., Inc.*, 192 B.R. 503, 505-506 (Bankr. D. Neb. 1996). In fact, courts regularly allow creditors to amend their proofs to address technical defects, such as substituting the name of the real party in interest. *Gens v. Resolution Trust Corp.*, 112 F. 3d 569, 575 (1st Cir. 1997); *In re Unioil, Inc.*, 962 F. 2d 988, 992 (10th Cir. 1992) (claim was amendable as a matter of law). Failure to allow such an amendment under these circumstances constitutes an abuse of discretion. *Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993); *In re Sambo's*

---

[4] Nor is this the only instance the bankruptcy court has demonstrated an unfamiliarity with the Federal Rules of Civil Procedure. *See e.g. Chowdhury I,* Doc. 18 (reversing and remanding entry of default because the local rule was misapplied; the proper two-step procedure under Rule 55 was not followed; and Chowdhury was wrongly held to a higher standard on his motion to vacate); *id.*, Doc. 10 at 16 (at the hearing to vacate, the bankruptcy court asserted: "that is the normal procedure in Minnesota").

[5] For the same reason, the court found the creditors violated the automatic stay by moving to substitute the Debtor on the judgment in *AF Holdings*. However, substitution is an equitable procedure. The court is not amending the judgment to add a new defendant, but is merely inserting the correct name of the real defendant. Fed. R. Civ. P. 25(c); *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (2nd Dist. Ct. App. July 27, 2011).

17

*Restaurants, Inc.*, 754 F.2d 811, 816–17 (9th Cir. 1985). Defendants were not only denied this opportunity, but the claims at issue had been objected to by the Trustee on the same basis and dismissed months prior. *Hansmeier*, Docs. 178, 195.

Had the court recognized the *Ingenuity 13* decision identifying the Debtor as the real party in interest and liable on the judgments, the Debtor could never have brought the nuisance suit; the bankruptcy court could not have found the proofs to be false; nor the Defendants compelled to settle.

> Exclusive jurisdiction to allow or disallow proofs of claim does not allow the court to ignore the effect of prepetition judgments. A prepetition judgment ruling on the merits of the debtors non-bankruptcy defenses is binding on the bankruptcy court…. Accordingly, the preclusive effect of a judgment cannot be attacked by means of an objection to a claim.

Howard J. Steinberg, *Bankruptcy Litigation*, § 10.62 (2d ed. 2015); *id.*, § 10.61.

## B.    Rule 25(c) substitution is not a post-petition cause of action.

On January 3, 2018, the bankruptcy court granted the Debtor's waiver of discharge. *Hansmeier*, Doc. 266. By virtue of the waiver, the automatic stay was terminated and the Defendants proceeded with the substitution of the Debtor pursuant to Fed. R. Civ. P. 25(c) in *AF Holdings*. Doc. 38 at Exhibit C. Rule 25(c) "is a discretionary 'procedural vehicle' in which 'the transferee is brought into court solely because it has come to own the property in issue.'" *Negrón-Almeda v. Santiago*, 579 F.3d 45, 53 (1st Cir. 2009) (citation omitted). "The merits of the case and the disposition of the property are still determined vis-a-vis the originally named parties.'" *Id.* (citation omitted). Substitution is appropriate even "after

judgment has been rendered." *Id.*, 579 F.3d at 53 (citation omitted). Parties may be added or substituted under Rule 25(c) even after a default judgment. *United States v. Aiken*, 867 F.2d 965, 967 (6th Cir. 1989) (affirming substitution); *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1258–59 (Fed. Cir. 1985) (affirming addition of "successors in interest and alter egos" of company subject to default judgment). If granted, the substitution of the Debtor in *AF Holdings* will relate back to the filing of the complaint, thus curing the basis for the Adversary Proceeding.

Again, Rule 25(c) is a procedural vehicle; it does not create substantive rights. *Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*, No. 11-CV-165, 2017 U.S. Dist. LEXIS 72300, *7 (D. Minn. Apr. 18, 2017); *Macan-Wightman v. Bajda*, No. 96-CV-309, 1998 U.S. Dist. LEXIS 9296, *6 (D. Minn. March 26, 1998). However, the bankruptcy court contends otherwise, characterizing substitution under the Rule to be a "post-petition cause of action." Doc. 23 at 30:5–6.

> THE COURT:   I am not sure how. I mean, even if you get a judgement against Mr. Hansmeier now, that's a post-petition judgment.
>
> MR. SWEET:   No, but it's not.
>
> THE COURT:   Counsel, counsel.
>
> MR. SWEET:   I'm sorry, I didn't mean to interrupt.
>
> THE COURT:   Please, please. It would be a post-petition judgment against the debtor and it couldn't be a pre-petition lien.

MR. SWEET:    Under Rule 25, substitution relates back to the date of the filing of the complaint. It is not post-petition.

THE COURT:    But the filing −

MR. SWEET:    I provided that law numerous times.[6]

*Chowdhury II*, Doc. 6 at 12:24–25; 13:1–17

The bankruptcy court's continuing insistence that substitution under Rule 25(c) is a substantive procedure is not without its exceptions. The bankruptcy court recently approved the Debtor's substitution in this Adversary Proceeding under Rule 25(c). Yet, in doing so, the court did not require Debtor to file a new action as a substantive procedure would require. Doc. 31.

## IV.    The reference should be withdrawn "for cause".

A district court may withdraw the reference to the bankruptcy court to hear an adversary proceeding "for cause shown." 28 U.S.C. § 157(d); *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir. 1985). Section 157(d) does not define the term "cause," but in deciding whether to withdraw a reference, the court considers factors such as 1) whether the claim is core; 2) the efficient use of judicial resources; 3) the delay and costs to the parties; 4) uniformity of bankruptcy administration; 5) the prevention of forum shopping; and 6) the presence of a jury

---

[6] *See e.g.* Doc. 38 at Exhibit A; Doc. 29 at ¶ 19, pgs. 39, 41, 56, 57; *Hansmeier*, Doc. 250 at 9.

demand. *Kelley v. Opportunity Fin., LLC*, No. 14-CV-3375, 2015 U.S. Dist. LEXIS 8526, \*6 (D. Minn. Jan. 26, 2015).[7]

The requisite cause for withdrawal may be found "if one or more of these factors is present." *United States v. Kaplan,* 146 B.R. 500, 504 (Bankr. D. Mass. 1992). No single factor is determinative, as a court may withdraw the reference even if a proceeding falls within a bankruptcy court's core jurisdiction. *See In re Sevko, Inc.*, 143 B.R. 114, 115 (Bankr. N.D. Ill. 1992); *In re Enviro-Scope Corp.*, 57 B.R. 1005, 1008 (Bankr. E.D. Penn. 1985) (same); *United States v. Miller*, No. 02-CV-0168, 2003 U.S. Dist. LEXIS 24884, \*13–14 (N.D. Tex. Dec. 22, 2003). Nor have courts hesitated to withdraw the reference from bankruptcy court for cause where avoidance actions overlap with claims pending in a district court. *See e.g. In re Chateaugay Com.*, No. 00-CV-9429, 2002 U.S. Dist. LEXIS 5318, \*20 (S.D. N.Y. Mar. 29, 2002) ("Even where a bankruptcy proceeding involves 'core' claims, courts frequently exercise their discretion to withdraw the reference if the bankruptcy action involves common questions of law and fact with a pending district court action."). *See also In re Wedtech*, 81 B.R. at 239–40; *Congress Credit Corp. v. AJC Int'l, Inc.*, 43 F.3d 686 (1st Cir. 1994); *Sevko,* 143 B.R. 114; *Enviro-Scope*, 57 B.R. at 1008.

---

[7] *See also Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985); *In re American Motor Club, Inc.,* 155 B.R. 49 (Bankr. E.D. N.Y. 1993); *In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir. 1993); *Sevko,* 143 B.R. 114; *In re Parklane/Atlanta Joint Venture,* 927 F.2d 532, 536 n.5 (11th Cir. 1991); *In re H & W Motor Express Co.,* 343 B.R. 208 (Bankr. N.D. Iowa 2006).

**A.    Unjust enrichment is a non-core claim.**

Proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related to proceedings. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770 (8th Cir. 1995) (quoting *Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993)).

"Claims that "arise in" [or "arise under"] Title 11 are claims that by their nature, *not their particular factual circumstance*, could only arise in the context of a bankruptcy case." *In re Farmland Industries, Inc.*, 567 F.3d 1010, 1018 (8th Cir. 2009) (emphasis added). *See also In re AFY, Inc.*, 461 B.R. 541, 546 (B.A.P. 8th Cir. 2011); 28 U.S.C. § 1334(b). These causes of action are generally referred to as "core" proceedings. *See In re Am. Energy Trading*, 291 B.R. 159, 167 (Bankr. W.D. Mo. 2003). Bankruptcy courts have final dispositive authority over core proceedings. "Core proceedings" are statutorily defined, and include matters generally considered essential to the nature of the bankruptcy process, such as matters concerning the administration of the estate, allowance of claims, matters of dischargeability, applicability of the stay, and so on. *See* 28 U.S.C. § 157(b)(2)(A)—(P). As the Eighth Circuit has explained, core proceedings are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Specialty Mills,* 51 F.3d at 773.

Conversely, a bankruptcy judge may only hear—and not finally determine— a non-core proceeding that is otherwise "related to" a case under Title 11. *See* 28

U.S.C. § 157(c)(1). Non-core, related to proceedings are those which do not invoke a substantive right created by federal bankruptcy law and which could exist outside of a bankruptcy. *Specialty Mills*, 51 F.3d at 773–74. In those "related to" cases, bankruptcy judges must submit proposed findings of fact and conclusions of law (a report and recommendation) which the district court will review *de novo*. *See In re AFY*, 461 B.R. at 547; *In re Civic Partners Sioux City*, No. 11-BK-00829, 2012 Bankr. LEXIS 938, *18 (Bankr. N.D. Iowa March 8, 2012).

There can be no doubt that the claim for unjust enrichment constitutes a state law cause of action on which *Stern* prevents this Court from entering final judgment. *Stern v. Marshall*, 564 U.S. 462, 468–71 (2011); *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172–73 (2014). That was the precise legal issue considered in *Stern* and, as courts have recognized, the case "certainly reaffirms that only an Article III judge can enter a judgment associated with the estate's recovery of contract and tort claims designed to augment the estate." *In re Teleservices Grp., Inc.*, 456 B.R. 323 (Bankr. W.D. Mich. 2011). *See also In re Falzerano*, 686 F.3d 885, 888 (8th Cir. 2012) (claims for unjust enrichment based upon a debt owed are beyond the scope of § 542(a)). Because the claim for unjust enrichment is non-core, the bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court," however, it may not enter final judgment on the claim. 28 U.S.C. § 157(c)(1). More so, Defendants have explicitly

declined to consent to final adjudication by a bankruptcy judge; thus, entry of final judgment by a bankruptcy judge is not available under 28 U.S.C. § 157(c)(2).

It makes little sense then to have the parties present to the bankruptcy court and have that court rule upon the issue, when this Court will have to evaluate all of this same evidence and review all of these legal rulings *de novo*, starting from scratch. As other courts have recognized, in order to "avoid the waste of judicial resources that would result if [the district court] were forced to conduct *de novo* review of the bankruptcy court's findings," judicial economy favors adjudicating the claims once, and only once, in the district court. *In re Almac's Inc.*, 202 B.R. 648, 659 (Bankr. D. R.I. 1996). Withdrawal of the reference also adds efficiency by avoiding the inevitable motion practice concerning the scope of the bankruptcy court's authority—a consideration other courts have recognized to support withdrawal, so as to "obviate any issues that may arise" on this point. *See e.g. In re Adelphia Commc'ns Corp. Secs. & Deriv. Litig.*, No. 03-MDL-1529, 2006 U.S. Dist. LEXIS 8700, *21 (S.D. N.Y. Feb. 10, 2006).

### 1.    Jurisdiction cannot be contingent.

The bankruptcy court has deemed this Adversary Proceeding either "related to or core" because "the bankruptcy estate retained an interest in any proceeds to be received from restitution ordered." *Chowdhury II*, Doc. 6 at 33:13–15.[8]

---

[8] The bankruptcy court cites no authority for its decision. For purposes of this argument, Defendants assume the bankruptcy court was looking to 28 U.S.C. § 157(b)(2)(O).

24

First, the claim at issue is a creature of state law; the judgment lien existed prior to the bankruptcy and was payable at whatever point in time the Debtor decided to sell his homestead. Absent the Debtor's bankruptcy filing, the claim would have been properly been brought in state court or as part of the proceedings in *AF Holdings*. It is decidedly non-core.

Second, Eighth Circuit law limits "related to" jurisdiction to whether a cause of action could conceivably affect the administration of the bankruptcy estate. *Speciality Mills v. Citizens State Bank,* 51 F.3d 770, 774 (8th Cir. 1995); *In re Dogpatch,* 810 F.2d 782, 786 (8th Cir. 1987). Further, common issues of fact and concerns regarding judicial economy are insufficient to bring a case within the bankruptcy court's subject matter jurisdiction. *See In re American Energy Trading, Inc.,* 291 B.R. 159, 168 (Bankr. W.D. Mo. 2003) ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]. Judicial economy does not justify federal jurisdiction.'") (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1985)). *See also In re Farmland Industries, Inc.,* 378 B.R. 829 (B.A.P. 8th Cir. 2007) (same).

The *McAlpin* case provides controlling precedent in this situation:

> We agree that the bankruptcy court did not have jurisdiction in the claim-objection proceeding under 28 U.S.C. §§ 157(b) or (c) (establishing core and non-core of the claimed collection costs came after his discharge, so the claim could no longer have been against the estate, and thus did not involve a right created by bankruptcy law or arising only in bankruptcy, *see*

25

*Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995) (core proceedings); and (2) the claim-objection proceeding was not related to the bankruptcy, because at the time Mr. McAlpin objected to the claim there was no longer a plan to be confirmed, or an estate, and therefore the proceeding could not conceivably have affected his estate, *see id.* at 773–74 (non-core proceedings must have "conceivable effect" on administration of debtor's estate); *In re Fairfield Cmtys., Inc.,* 142 F.3d 1093, 1095 (8th Cir. 1998) (once bankruptcy debtor's reorganization plan has been confirmed, debtor's estate, and thus bankruptcy court's jurisdiction, ceases to exist; bankruptcy court is not meant to protect parties with regard to post-confirmation matters).

*In re McAlpin,* 278 F.3d 866, 868 (8th Cir. 2002). *McAlpin* made clear that where there is no bankruptcy estate remaining, there can be no "related to" jurisdiction. *See also In re Valley Food Servs., Inc.*, 400 B.R. 724, 728 (Bankr. W.D. Mo. 2008). Here, the Debtor has waived discharge and the creditors have all been paid in full. All that remains of the underlying bankruptcy is this Adversary Proceeding.

Third, whatever the terms of the assignment between the Trustee and Debtor may be, none has ever been produced showing the Trustee's contingent security interest is dependent upon the matter remaining in bankruptcy court. Proceedings are not rendered core simply because they *may* involve property of the estate which one day *may* be used to satisfy creditors. As the Supreme Court held in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982) and reaffirmed in *Stern*, Congress cannot constitutionally empower a non-Article III bankruptcy court to adjudicate, with finality, claims that are not within the core of the bankruptcy authority created in the Constitution. To hold, as the bankruptcy court seems to suggest, that § 157(b)(2)(O) makes any proceeding core when the

proceeding has the capacity to affect the ultimate assets of the estate would create "an exception to *Marathon* that would swallow the rule." *United States Lines*, 197 F.3d at 637; *Orion*, 4 F.3d at 1102. For this reason, courts have consistently rejected such an interpretation of § 157(b)(2)(O). *See e.g. In re Complete Mgmt., Inc.*, No. 02-CV-1736, 2002 U.S. Dist. LEXIS 18344, *10 (S.D. N.Y. Sept. 27, 2002).

Fourth, the bankruptcy court and the Debtor have characterized this Adversary Proceeding as one for restitution. However, under Minnesota law, "restitution is an equitable remedy, not a cause of action." *Gaalswyk v. King*, No. 10-CV-411, 2011 U.S. Dist. LEXIS 104313, *47–48 (D. Minn. Aug. 2, 2011). Restitution in Minnesota, is contingent upon proof of unjust enrichment, which the Debtor has failed to prove. *Anheluk v. Ohlsen*, 459 F.3d 874, 880 (8th Cir. 2006). *See also See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) (discussing federal law: restitution requires appellant shows that equity will be offended if the appellee is allowed to retain what he received under the erroneous judgment). Once the claim is properly characterized as one for unjust enrichment, it is clear that no cause of action pled in this Adversary Proceeding "depend[s] on the bankruptcy laws for its existence." *Krongard v. Auto-Owners Ins. Co.,* No. 12-CV-3008, 2013 U.S. Dist. LEXIS 131107, *10 (D. Minn. Sep. 13, 2013).

Where a cause of action sued upon was formed prior to the bankruptcy petition, it is unlikely that a proceeding based on that turns on the bankruptcy laws,

*Orion*, 4 F.3d at 1102; the bankruptcy court has presented no contrary argument here. Nor, for the reasons stated above, is this a proceeding that directly impacts an indisputably core function such as the administration of claims against the estate. *McAlpin,* 278 F.3d at 868; *United States Lines*, 197 F.3d at 637.

### 2.    The proceeds of the sale were never property of the estate.

Alternatively, the bankruptcy court has deemed this proceeding either "related to or core" because "it's a claim for restitution for the payment of funds from the bankruptcy estate." *Chowdhury II*, Doc. 6 at 27:19–23.[9]

First, The Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. §§ 513.41–513.51, defines "asset" as property of a debtor, but the term does not include: (i) property to the extent it is encumbered by a valid lien. At the time, the lien was valid. *In re WEB2B Payment Solutions, Inc.*, 488 B.R. 387, 390 (B.A.P. 8th Cir. 2013) (a creditor's secured status is determined as of the date of the filing of the petition) (citing *Isaacs v. Hobbs Tie & Timber Co*., 282 U.S. 734, 738, (1931).

---

[9] In support of its holding that the Defendants were paid from property of the estate, the bankruptcy court states "Mr. Hansmeier gave you the money because the court ordered it." *Id.*, 19:12–13. This is not accurate. The record shows the Debtor voluntarily petitioned for and was granted permission to sell his homestead pursuant to 11 U.S.C. §§ 363, 1303 and use the proceeds to pay the Defendants. *Hansmeier,* Doc. 46 at 4–5; *Chowdhury II*, Doc. 9 at 11–12.

Second, whether the homestead was even property of the estate, was an issue raised by the U.S. Trustee, but not decided on prior to granting the Debtor's petition to sell.

> [I]t's where did the money come from and did the money that's in the homestead come from some source that is not, you know, a legitimate source, and we have in the record a history of this Debtor manipulating courts around the country and doing all kinds of things to generate fees and dodging collection efforts through the use of corporate shells and different law firms and other entities, and it's very possible that the money that's sitting in the homestead can be traced back through one of these other entities.

*Hansmeier*, Doc. 78 at 12:24–25; 13:1–11. Although the bankruptcy court never ruled on the issue as to whether the property was purchased with fraudulently obtained funds and thus exempt from the estate, that may change, as the Debtor is currently being investigated for bankruptcy fraud. *U.S. Trustee v. Hansmeier*, No. 16-AP-04035, Doc. 19 at 4 (Bankr. D. Minn. 2016).

Third, subsequent to the sale free and clear and the escrowing of the proceeds from the Debtor's homestead, there no longer existed any property of the estate under § 541(a)(1). Especially upon the conversion of this case to a Chapter 7. *In re McKinney*, 45 B.R. 790, 791–792 (Bankr. W.D. Ky. 1985); *In re Krick*, 373 B.R. 593, 607 (Bankr. N.D. Ind. 2007); *In re Gray*, 642 Fed. App'x. 641, 643 (8th Cir. 2016). *See also Jeffries v. Browning*, 821 F.2d 520 (8th Cir. 1987) (property is no longer property of the estate once it is sold). The conclusion from this is

inescapable: no property interest in the homestead passed into the bankruptcy estate; so any challenge could not be a core proceeding.

Fourth, to like effect, a "conceivable effect" on the administration of the estate is no longer possible after the estate has been fully administered, or after the outcome of the proceeding can no longer factually or legally affect the size of the estate or the division of it among claimants. Again, the creditors have all settled and the Debtor has waived discharge—there remains no estate left to administer. Thus, after that point there is no longer a basis for related-proceeding jurisdiction either. *In re A.P.I., Inc.*, 537 B.R. at 911; *In re Barsness*, 398 B.R. at 659.

### C.      Defendants are entitled to, and will seek, a trial by jury.

For related reasons, a defendant's right to a jury trial counsels in favor of withdrawal of the reference. Under 28 U.S.C. § 157(c), all bankruptcy rulings in non-core matters are reviewable by a district court. As a result, a jury verdict in a bankruptcy trial would be subject to review by the district court, which in turn would violate the Re-examination Clause of the Seventh Amendment. Thus, the Constitution "prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion*, 4 F.3d at 1101; *see* U.S. Const amend. VII. It follows that "a finding that a claim is non-core and that a jury demand has been filed may create cause for withdrawing the reference." *Orion*, 4 F.3d at 1101; *see also Hassett v. BancOhio Nat'l Bank*, 172 B.R. 748, 755 (Bankr. S.D. N.Y. 1994) ("The fact that an adversary proceeding concerns non-core matters for which the right to a jury

trial is available is sufficient cause for discretionary withdrawal of reference under §157(d).").

While the presence of a jury demand does not in and of itself necessitate pretrial withdrawal of the reference, it—in conjunction with the factors discussed above—weighs in favor of withdrawal, since "withdrawal of the reference will obviate any issues that may arise about jury trial." *In re Adelphia Commc'ns*, 2006 U.S. Dist. LEXIS 8700, *21. *See also H & W Motor Express*, 343 B.R. at 214 ("courts considering whether the withdrawal of the reference is appropriate have examined a broad range of factors, including … the presence of a jury demand") (collecting cases); *Big Rivers Elec. Corp. v. Green River Coal Co., Inc.*, 182 B.R. 751, 754 (Bankr. W.D. Ky. 1995) (same). Here, although Defendants have not yet made a jury demand, they have represented that they will make such a demand should the case proceed to trial. This factor thus favors withdrawal of the reference.

### D.     Withdrawal of the reference will foster judicial economy.

"Principles of judicial economy require that, without good reason, judicial resources should not be spent by duplicitous litigation, and that a lawsuit should only be tried once." *In the Matter of United Imports, Inc.*, 203 B.R. 162, 167 (Bankr. D. Neb. 1996) (quoting *In re Marvin Johnson's Auto Serv., Inc.*, 192 B.R. 1008, 1015 (Bankr. N.D. Ala. 1996)).

Where, as here, adversary proceedings brought in a bankruptcy case raise identical claims as to those asserted in a pending district court action, withdrawal of the reference is appropriate, thereby eliminating the risk of further inconsistent adjudication and mitigating the unnecessary and wasteful expense to the parties and the courts that comes from duplicative litigation. *See e.g. Sevko*, 143 B.R. at 117 (withdrawing the reference in a core proceeding in order to reduce "duplicative proceedings to a single forum" thereby "serv[ing] judicial economy, and spar[ing] the resources of the parties in the bankruptcy proceeding … [and] serv[ing] to protect the parties from inconsistent factual results"); *Enviro-Scope*, 57 B.R. at 1008–09 (withdrawing the reference in core proceeding based primarily on reasons of judicial economy).

Once the reference is withdrawn, the Court will then be able to coordinate and consolidate the Adversary Proceeding with the *AF Holdings* action. Courts recognize that withdrawal of the reference and consolidation is the most pragmatic, just, and efficient solution where adversary proceedings present common issues of law and fact as concurrently-pending district court proceedings. *See e.g. H & W Motor Express*, 343 B.R. at 216 ("[W]here a proceeding in bankruptcy involves common issues of law and fact with a case pending in district court, there are practical reasons for granting a motion to withdraw reference and, ultimately, consolidating the action with the district court proceeding.") (citing *Big Rivers Elec.*, 182 B.R. at 755); *In re Eagle Enters., Inc.*, 259 B.R. 83, 88 (Bankr. E.D. Pa.

32

2001) (consolidation of related cases benefits "the parties … the public interest, judicial economy, and uniformity"). Moreover, because of the bankruptcy court's limited jurisdiction, the benefits of coordination and consolidation can only be obtained in district court. *See e.g. Congress Credit Corp.*, 43 F.3d at 691 ("We direct use of § 157(d) not because of any fault on the part of the bankruptcy court, but because bringing the preference claims into the district court will allow all facets of these controversies affecting the same property and the same defendants to be disposed of by one tribunal having undoubted jurisdiction and authority.").

## CONCLUSION

In order to avoid wasting judicial resources on duplicative and unnecessary proceedings on the Debtor's claim, good cause exists for the Court, pursuant to its authority under 28 U.S.C. § 157(d), to withdraw its reference of this proceeding to the bankruptcy court.

Dated: May 8, 2018

Respectfully,

s/ Jason E. Sweet
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*

33

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                          Chapter 7

PAUL HANSMEIER,                                 No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                         Adv. No. 16-04124

     Plaintiff

  v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

### CERTIFICATE OF COMPLIANCE

---

I hereby certify that the foregoing Memorandum in Support of Motion of Defendants to Withdraw the Reference complies with Local Rule 7.1(f). I further certify that, in preparation of the above document, I used the following word processing program and version: Apple Pages and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count. I further certify that the above document contains the following number of words: 8,718.

Dated: May 8, 2018

Respectfully,

s/ Jason E. Sweet
_____
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                           Chapter 7

PAUL HANSMEIER,                                  No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                          Adv. No. 16-04124

     Plaintiff

  v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on May 8, 2018, I caused the *Motion to Withdraw the Reference* and *Memorandum in Support of Motion to Withdraw the Reference* to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a). I also certify that the document was served via U.S. Mail first class postage prepaid on:

Paul R. Hansmeier
9272 Cortland Alcove
Woodbury, MN 55125

Dated: May 8, 2018

Respectfully,

s/ Jason E. Sweet
_____
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*